**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| *Plaintiff-Respondent* | } | |
| | } | |
| v. | } | CRIMINAL ACTION NO. H-91-176-1 |
| | } | CIVIL ACTION NO. H-04-2367 |
| HENRY WILLIAM NUNEZ | } | |
| *Defendant-Petitioner* | } | |

## OPINION & ORDER

Presently before the Court are (1) Petitioner Henry William Nunez's ("Nunez's") (i) Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 396);[1] (ii) Motion Requesting Leave to Amend § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 399); (iii) Notice of Filing (Doc. 402); (iv) Motion for Leave to file Supplement to Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 403) and Supplemental Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc.404); and (v) Motion Requesting Leave to Supplement § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 418) and Second Supplement to Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 419); (2) the United States' (i) Answer (Doc. 411); (ii) Motion for Summary Judgment (Doc. 412); and (iii) Response to the Magistrate Court's July 24, 2006, Order (Doc. 432); (3) the Magistrate Judge's Memorandum and Recommendation (Doc. 433); and (4) Nunez's Objections thereto (Doc. 435).[2] The Court held an evidentiary hearing on September 13, 2007, to determine whether Nunez instructed his lawyer to file an appeal and his counsel failed to do so.  After careful consideration

---

[1] Nunez's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-04-23 67 and at Document No. 396 in Criminal Action H-9 1-176. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

[2] Nunez requested leave to file additional objections out of time should it become necessary to do so (Doc. 436).  As no further objections have been filed, Nunez's request is DENIED as MOOT.

of the entire record and the applicable legal standards, the Court concludes that Nunez's motion to vacate, set aside, or correct sentence should be **DENIED** and **DISMISSED**.

I.          Background[3]

In 1991, Nunez, among others, was charged with a three-count indictment alleging (1) that all defendants conspired  to possess with intent to distribute in excess 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 ("Count 1");.(2) that all defendants aided and abetted each other to possess with intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A) and 18 U.S.C. § 2. ("Count 2"); and (3) that Nunez and his wife, Liliana, engaged in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 2, 1957(a)(b)(1) and 3571(b) ("Count 3"). Because Nunez and Liliana failed to appear for a hearing, the Court issued bench warrants for their arrest.  Nunez was  not arrested until May 2002.

The Court appointed attorney Steve Baxley ("Baxley") as counsel for Nunez.  Nunez requested different counsel, which the Court denied.  Thereafter, Nunez entered into a written plea agreement with the Government. Nunez agreed to plead guilty to Count 1 of the indictment.  Nunez also agreed to waive his right to appeal the conviction and sentence, except for upward departure, and agreed to waive his right to collaterally attack his conviction.  The Government's agreed to drop Counts 2 and 3 of the indictment and  not to object to a finding by the Probation Department that Nunez accepted responsibility pursuant to U.S.S.G. § 3E1.1(a).  The Government also agreed not to charge Nunez with failure to appear.

At Nunez's Rearraignment hearing, the Court engaged in an extended colloquy to

---

[3] The facts and procedural history of this case were detailed at length in the Magistrate Judge's Memorandum and Recommendation (Doc. 433).  Familiarity with the Memorandum and Recommendation is assumed.

ensure that Nunez understood the charges against him, the maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated. He averred that he had read the plea agreement, discussed it with his attorney, and understood its terms.  Moreover, he assured the court that the plea agreement encompassed the entire agreement between the parties and that he was pleading guilty because he was guilty:

> The Court: Do you understand all the other provisions of that written plea agreement?
>
> The Defendant: Yes, ma'am.
>
> The Court: All right. Does that written plea agreement contain all of the promises and assurances that have been made to you in an effort to [ ] persuade you to plead guilty in this case?
>
> The Defendant: Can I talk to my lawyer? (Conferring with counsel) Yes, ma'am.
>
> The Court: What I want to know is, are there any other oral agreements or any other kind of agreements that didn't get written down in that written plea agreement?
>
> The Defendant: No, ma'am.
>
> The Court: All right. Has anybody made any different promises to you that didn't get put into the written plea agreement?
>
> The Defendant: No, ma'am.
>
> The Court: Has anyone in any way attempted to force you to plead guilty in this case?
>
> The Defendant: No, ma'am.
>
> The Court: Are you pleading guilty because you are guilty?
>
> The Defendant: Yes, ma'am.

The Court explained the maximum penalties facing Nunez, which included a statutory maximum

sentence of life imprisonment. The Court also explained how sentencing would proceed, and Nunez

assured the Court that he understood the Court's role in determining his sentence. Finally, Nunez

expressly testified that he understood that he was waiving most, if not all, of his rights to appeal his

sentence:

> The Court: But that by entering into this plea agreement with the Government, do you understand that you will be waiving most, if not all, of the rights that you would have to appeal any sentence that I impose?
>
> The Defendant: I understand that.
>
>                         ***
>
> The Court: All right. And that any rights you would have to appeal any sentence I impose would be governed by the terms of the written plea agreement. Do you understand that?
>
> The Defendant: Yes, ma'am.
>
> The Court: And that goes also for any collateral attacks, such as habeas corpus, that you might want to file to overturn any sentence I impose. Do you understand that?
>
> The Defendant: Yes, ma'am

Nunez executed the plea agreement, and the Court adjudicated him guilty.

Nunez retained new counsel, George Parnham ("Parnham") for sentencing. The

Court granted Nunez's request to substitute Parnham for Baxley. The day before sentencing,

attorney Edwin Dee McWilliams ("McWilliams"), an associate for Parnham, filed a notice of

appearance on behalf of Nunez. The notice indicated that Nunez agreed to McWilliams's

representation at sentencing.

Nunez was sentenced on June 6, 2003. McWilliams had filed a number of objections

to the Pre-sentence Investigative Report ("PSR"), which the Court resolved. Of particular note was

Nunez's claim that he and his family had been kidnaped and taken to Mexico shortly after the indictment was issued in this case.  After overruling Nunez's objections to the PSR,[4] the Court found that

> Mr. Nunez is considered to be a leader/organizer of an extensive cocaine conspiracy in Houston, Texas, during the late 1980s and early 1990s. He has been involved in the distribution of over 2,500 kilograms of cocaine and over $34 million of drug proceeds. Mr. Nunez has been a fugitive from justice for the past ten years. He has a previous conviction for attempted criminal trespass and reports having no recent history of drug abuse.
>
> The Guidelines call for a sentence of life term of imprisonment, and the sentence would meet the sentencing objectives of deterrence, incapacitation and punishment and appears to be an adequate sanction.

(Doc. 395 at  30).  Also, the Court imposed a special assessment of $100.  Judgment was entered on June 23, 2003. (Doc. 390).

Nunez did not file a direct appeal.  He did timely file the present § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 396). In this § 2255 motion, Nunez alleges that he entered his guilty plea involuntarily and unknowingly based on ineffective assistance of counsel. According to Nunez, Baxley was ineffective because he did not want to prepare for trial and instead pushed Nunez to accept a plea, even though Nunez maintained his innocence. Nunez alleges that Baxley only met with him on 3 or 4 occasions, would not review the discovery with him, failed to inform him of the nature of the charges, the maximum penalties and the applicable law. Instead, Nunez contends that he was told by Baxley that "the government was willing to enter a 'special plea', which would provide for a three level reduction for acceptance of responsibility, that the government

---

[4] The Court was unpersuaded by Nunez's kidnaping claim, at least as it related to reducing his culpability in obstructing justice.

would not move to enhance his sentence or charge him with bond jumping." As to his allegations of ineffective of assistance of counsel claims concerning Parnham and McWilliams, Nunez alleges he told Parnham he wanted to withdraw his guilty plea.  In addition, Nunez claims he was prejudiced by McWilliams represented him at sentencing instead of Parnham. According to Nunez, he was not notified about the change in counsel and was pressured to agree to the substitution.  Nunez also contends that the objections to the PSR were untimely filed. Lastly, Nunez alleges that he asked McWilliams to file a notice of appeal, which was not done.

Thereafter, Nunez filed his first motion for leave to amend his § 2255 motion (Doc. 399) to add the transcript of his Sentencing Hearing as an exhibit.  Magistrate Judge Stacy approved Nunez's request and granted the first motion to amend.

On July 7, 2004, Nunez filed a second motion for leave to amend his § 2255 motion (Doc. 403) to argue that his sentence enhancement was unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004).  On December 30, 2005, Nunez filed a third motion for leave to amend his § 2255 motion (Doc. 418) to argue that his sentence enhancement was unconstitutional in light of *United States v. Booker*, 543 U.S. 220 (2005).

On September 25, 2006, Magistrate Judge Stacy issued her Memorandum and Recommendation (Doc. 433) thoroughly addressing Nunez's motions to amend and his claims for ineffective assistance of counsel.  The only issue left unresolved was the ineffective assistance of counsel claim against McWilliams for allegedly failing to file a direct appeal, for which Judge Stacy recommended the Court engage in an evidentiary hearing.  On September 13, 2007, the Court held a hearing to address the limited issue of whether Nunez consulted with McWilliams about Nunez's appellate rights.

Having heard the evidence at the hearing, and after a careful review of the record and the applicable law, the Court agrees with Judge Stacey's analysis of these issues and adopts the Memorandum and Recommendation in full.   Nunez's objections to the Memorandum and Recommendation are therefore DENIED.   The Court writes separately to resolve the merits of Nunez's ineffective assistance of counsel claim based on the alleged failure of his counsel to file a direct appeal.

II.          The Evidentiary Hearing

Nunez was represented at the hearing by his current counsel, Maria Elena Perez ("Perez").   In addition to Nunez and McWillaims, Perez called as witnesses Shirley Ramirez ("Shirley"), Nunez's daughter, and Liliana Nunez ("Liliana"), his wife and former co-defendant. All witnesses were cross-examined at length by the Government.   The Government also called McWilliams as a witness, who was cross-examined by Perez.   The Court will briefly highlight the relevant testimony.

(1)      Nunez's Testimony

Most of Nunez's initial testimony dealt with his relationship with Baxley and his alleged confusion relating to the plea agreement.  (*See* Tr. at 54-61)  With respect to his appellate rights, Nunez testified that Baxley never explained the advantages or disadvantages of filing an appeal.  (*Id.* at 62).  Nunez also claimed that Baxley did not explain appellate waiver as it related to his plea agreement.  (*Id.*)

Nunez testified that neither McWilliams nor Parnham met with him prior to sentencing to discuss his appellate rights or the advantages/disadvantages of filing a direct appeal. (*Id.* at 64-65).  He further testified that neither McWilliams  nor Parnham discussed the possibility

of attacking the appellate waiver in his plea agreement.  (*Id.* at 65).  He testified that no attorney had

ever discussed the appellate waiver provision with him.  (*Id.* at 77-79).  During the course of the

Government's cross-examination, however, Nunez admitted that he had, at some point, discussed

the waiver provision of his plea agreement with McWilliams.  (*Id.* at 74).

   Nunez testified that, immediately after the Court imposed its sentence, he asked

McWilliams to file an appeal.  (*Id.* at 65, 77).  Nunez claimed that McWilliams said that he would

come and see him in three days at the jail; nevertheless,  Nunez testified  that "[n]obody ever went

to meet with me."  (*Id.* at 65).  Additionally, Nunez testified that after his sentencing he continued

to request that his attorneys file an appeal.  (*Id.* at 66).  He also claimed to have sent letters to them

requesting an appeal.  (*Id.*)  Nunez testified that but for his counsels' alleged failure to file a notice

of appeal, he would have filed an appeal.  (*Id.*)

   (2) McWilliams's Testimony

   McWilliams, on direct examination by Perez, testified that he had been a licensed

criminal attorney since May 2000.  (*Id.* at 4-5).  He testified that he was an associate of Parnham's

and that "when [Nunez] hired [Parnham], he hired me and all of our staff with us."  (*Id.* at 5).

According to McWilliams, he "had counseled with [Nunez] for a long time throughout the process"

and did not believe that Nunez was uncomfortable with his representing Nunez at the sentencing.

(*Id.* at 8).  He testified that he had met with Nunez at least three times prior to the sentencing

hearing.  (*Id.*).  After the Court sentenced Nunez to life imprisonment, McWilliams testified that

both he and Nunez were shocked and upset, Nunez so much so that "[Nunez] was trying to contain

his emotion and really couldn't talk."  (*Id.* at 9).

   McWilliams testified that he consulted with Nunez and his family about his appellate

rights at length before the sentencing.  (*Id*. at 14).  He also testified that he spoke with Nunez's family after the sentencing about the advantages and disadvantages of filing a direct appeal.  (*Id.* at 14-15; 19-20).  McWilliams unequviocally denied that either Nunez or his family had ever asked him to file a direct appeal.  (*Id.* at 14-16, 22, 26).  McWilliams testified that he did not expect Nunez to request him to file an appeal because of the conversations in which they discussed Nunez's waiver of his direct appellate rights.  (*Id.* at 15-16).  Moreover, he testified that he absolutely would have filed a notice of appeal had Nunez requested him to do so, but reiterated that he did not expect such a request based on prior conversations regarding the waiver provision in the plea agreement.  (*Id.* at 22).

On direct examination by the Government, McWilliams testified again that Nunez did not ask him to file a direct appeal.  (*Id.* at 82).

(3)    Shirley's Testimony

Shirley testified that she hired Parnham to represent her father at the sentencing hearing.  (*Id.* at 41).  She testified that she did not recall meeting with McWilliams before the day of Nunez's sentencing.  (*Id.*).  She claimed that she never met with McWilliams or any other attorney after her father's sentencing.  (*Id.* at 43).  She stated that no attorney had discussed her father's appellate rights, but further explained that she "was under the impression that if [Nunez] got sentenced . . . that that was it, that he didn't have a right to appeal because he pleaded guilty or something."  (*Id.* at 43).  She claimed that her knowledge about appeals came from "research" and "friends."  (*Id.* at 47).  She  testified that neither McWilliams nor Parnham had discussed appeals with her or her mother.  (*Id.* at 44).  She claimed that Nunez had requested that his attorneys file a notice of appeal.  (*Id.*).  She also testified that she made numerous phone calls to Parnham's office

to request that they see Nunez and file an appeal but that these phone calls were never returned.  (*Id.* at 44-45).  Finally, she claims that Nunez unequivocally expressed his desire to appeal his sentence.  (*Id.* at 45).  She acknowledged that she did not send any letters to Parnham's office regarding Nunez's request to file a notice of appeal.  (*Id.* at 48).

> (4)    Liliana's Testimony

Liliana testified that she met McWilliams and/or Parnham once before Nunez's sentencing.  (*Id.* at 50).  She claimed that neither McWilliams nor Parnham discussed anything with her regarding Nunez's appellate rights.  (*Id.* at 50-51).  She testified further that she was sure Nunez wanted to appeal his case after sentencing.  (*Id.* at 52).

III.    <u>Discussion</u>

The Supreme Court held in *Strickland v. Washington*, 466 U.S. 668 (1984), that criminal defendants have a Sixth Amendment right to "reasonably effective" assistance of counsel.  *Id.* at 687.  Under the two-prong *Strickland* test, a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness," *id.* at 688, and (2) that counsel's deficient performance prejudiced the defendant, *id.* at 694.  The *Strickland* standard applies to claims, like Nunez's, that counsel was constitutionally ineffective for failing to file a notice of appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Here, Nunez claims that he instructed McWilliams to file an appeal and McWilliams disregarded his request.  Counsel "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Id.*  The law is clear that "[a] failure to file a requested notice of appeal is ineffective assistance of counsel even without a showing that the appeal would have merit." *Id.*; *see also United States v. Tapp*, 491 F.3d 263, 266

(5th Cir. 2007) ("[I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal.").  The Fifth Circuit has expressly held that "the rule of *Flores-Ortega* applies even where a defendant has waived his right to direct appeal and collateral review." *Tapp*, 491 F.3d at 266.  To establish prejudice, a defendant such as Nunez must demonstrate only that there is a reasonable probability that but for counsel's alleged failure, he would have appealed. *Flores-Ortega*, 528 U.S. at 486.

The factual dispute at issue is whether Nunez actually instructed McWilliams to file an appeal.  The Court had the opportunity to view the demeanor and testimony of all the witnesses and weigh the credibility of Nunez, on the one hand, and McWilliams on the other.  It is Nunez's burden to persuade the Court that he more likely than not requested that McWilliams appeal.  *See United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) (a section 2255 petitioner has the burden of proof to show that his counsel was ineffective).  The Court finds that Nunez has failed to meet his burden.

The Court simply does not find Nunez's evidence to be credible.  First, Nunez has strong motivation here to fabricate his story.  In order to succeed to merit relief on this issue under section 2255, Nunez knows that he must establish having asked McWilliams to file an appeal on his behalf.

Second, the Court finds it incredible that Nunez asked McWilliams to file an appeal during his strong emotional reaction to sentencing.  All the testimony agreed that Nunez was "shocked" and "upset" at the imposition of his sentence.  Nevertheless, Nunez asks the Court to

believe that in the midst of his shocked state, he had the presence of mind to turn to McWilliams and instruct him to file an appeal.  The Court finds such timing to be suspect.

Third, there are serious inconsistencies within Nunez's testimony that reveal he is being less than straightforward with the Court.  For example, he claimed that no attorney had ever discussed the appellate waiver provision to him, which is clearly contradicted by his testimony that he had, at some point, discussed the waiver provision of his plea agreement with McWilliams.  This tendency for being inconsistent is underscored by Nunez's claim at the hearing to have not understood his plea agreement, when, at the sentencing hearing, Nunez solemnly swore that he understood the terms and conditions of his plea agreement.

Finally, the Court finds that Shirley's and Liliana's testimony lacks credibility as well.  Both are strongly motivated to fabricate a requested appeal in an effort to help their family member.  The Court found their testimony to be vague and, at places, contradictory.  Shirley testified that no attorney spoke with her about the waiver provision or her father's appellate rights, but she clearly understood that the plea agreement contemplated a waiver of a direct appeal.  She said as much when she testified "that he didn't have a right to appeal because he pleaded guilty or something."  (Tr. at 43).

The Court finds McWilliams's testimony to be more credible.  McWilliams does not have a direct stake here and has no reason to misstate the contents of his dealings with Nunez.  At every turn, McWilliams denied having received a request from Nunez to file an appeal.  Moreover, his testimony did not exhibit the same inconsistencies as that of Nunez's. He clarified issues and impressed the Court as being honest about his dealings with Nunez and his family.  McWilliams advocated strongly on Nunez's behalf at the sentencing, and the Court believes that if Nunez had

ever asked him to file a direct appeal, McWilliams would have done so.

For these reasons, the Court discounts the testimony of Nunez, Shirley, and Liliana and credits the testimony of McWilliams.  The Court finds that McWilliams's failure to file an appeal was not deficient because Nunez never instructed him to do so.

Nevertheless, the Court must also consider whether Nunez "consulted" with McWilliams about an appeal.  The Supreme Court explained in *Flores-Ortega*:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*See Flores-Ortega*, 528 U.S. at 478.  "Consult" is this context means that counsel advised the defendant about the advantages and disadvantages of an appeal and made a reasonable effort to discover the defendant's wishes.  *Id.*   Failure of counsel to consult his client about appellate rights does not, however, automatically result in ineffective assistance of counsel.  Rather, the Supreme Court adopted the following test to determine whether counsel has a constitutionally-imposed duty to consult with a defendant about a potential appeal: whether there is a reason for counsel to think either (1) "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)" or (2) "that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id.* at 480.  A court should look at the totality of the circumstances regarding the information counsel knew or should have known.  *Id.* The Supreme

Court further noted that, "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Even if counsel violates his duty to consult, a defendant must still demonstrate prejudice, i.e., "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* at 486.

For the same credibility determinations made above, the Court finds that McWilliams did "consult" with Nunez. Additionally, Nunez admitted that he discussed the appellate waiver provision with McWilliams prior to sentencing. (Tr. at 74). The more reasonable conclusion in this case is that Nunez understood that he had waived his direct appellate rights per the plea agreement and chose not to request that his counsel file an appeal.

1.        Conclusion

Accordingly and for the aforementioned reasons, it is hereby

**ORDERED** that Petitioner's Motion Requesting Leave to Amend § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 399) is **GRANTED**, Petitioner's Motion Requesting Leave to Supplement § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 403) and Petitioner's Motion Requesting Leave to Supplement § 2255 Motion to Vacate, Set Aside or Correct Sentence (Doc. 418) are both **DENIED**; it is further **ORDERED** that the Government's Motion for Summary Judgment (Doc. 412) is **GRANTED**.  The Court adopts the Magistrate Judge's Memorandum and Recommendation in full

**SIGNED** at Houston, Texas, this 28th day of September, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE